SVETOZAR BULATOVIC *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. ROBERT DOBRITCHANIN *et al.*, Defendants (American National Bank and Trust Company, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants; Mark S. Simon *et al.*, Cross-Appellees).

First District (1st Division)   No. 1—91—2740

Opinion filed April 19, 1993.—Rehearing denied October 7, 1993.

Mark S. Simon and Hammond & Kubaszewski, both of Chicago (Carl Kubaszewski, of counsel), for appellants and cross-appellees.

Nealis & Frazel, of Chicago (Richard J. Nealis, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

The plaintiffs, Svetozar and Leposava Bulatovic, filed a seven-count, second-amended complaint against numerous defendants arising out of a business deal which involved the acquisition, development and sale of certain real property. The trial court granted judgment on the pleadings (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992))) for defendants on plaintiffs' count in ejectment on the grounds that as a matter of law defendants had "sufficient title here to resist any action for ejectment." The trial court also denied both parties' cross-motions for sanctions. On appeal, plaintiffs contend that the allegations in count VII sufficiently set forth an action in ejectment and that plaintiffs still hold legal title to the subject property. Defendants cross-appeal the trial court's denial of sanctions.

On April 30, 1990, plaintiffs filed an eight-count complaint seeking various relief against numerous defendants. In effect, plaintiffs alleged in counts I through VII that the $525,000 in purchase money defendants Chung Hwe Park and Moon Hwa Park paid for the property was converted by plaintiffs' attorney and the general contractor who developed the property. Specifically, plaintiffs alleged that in January 1987, Vuk Zecevic (Zecevic), a friend for more than 20 years, approached them with an investment scheme. According to plaintiffs' complaint, Zecevic was an experienced general contractor and a co-owner in Rapid Builders, Inc., along with Robert Dobritchanin (Dobritchanin), plaintiffs' attorney. Zecevic proposed that plaintiffs obtain financing through Howard Savings for the acquisition and development of certain property. He told them he would arrange through Howard Savings for plaintiffs to purchase the property. He would develop the property as the general contractor and then sell it "with no money required from the plaintiffs." Additionally, Zecevic allegedly represented to plaintiffs that they would be entitled to all the profits.

Howard Savings agreed to provide plaintiffs with $240,000 for the purchase and development of the property, and on May 29, 1987, plaintiffs purchased the property and took title in joint tenancy. The transaction documents were prepared by Dobritchanin. When the construction was nearly completed, Zecevic listed plaintiffs' property for sale for $525,000 and, on plaintiffs' behalf, accepted defendant Park's offer. Allegedly, at Zecevic's direction, Mr. Bulatovic then went to Dobritchanin's law office to sign some documents related to the contract for sale. According to plaintiffs, Dobritchanin told Bulatovic that he needed to sign some documents in advance of the closing in order to set up an escrow account because Park was leaving the country. The documents that Bulatovic signed included the deed to the property. Plaintiffs alleged that Mrs. Bulatovic never signed any documents. Plaintiffs further asserted that, without notice to plaintiffs, Dobritchanin sold plaintiffs' property on December 16, 1988, and delivered a deed containing the forged signature of Mrs. Bulatovic to defendants. Plaintiffs allege that they were never paid any profits and that Zecevic, Dobritchanin, or Rapid Builders are wrongfully withholding the purchase money from them.

The various counts against Zecevic, Dobritchanin, Rapid Builders, and the title insurance company involved in the transaction sounded in (1) a claim for constructive trust, (2) conversion and a claim for damages, (3) conspiracy and a claim for damages, (4) legal malpractice and a claim for damages against Dobritchanin, (5) breach of contract and a claim for damages against Rapid Builders, (6) breach of con-

tract and a claim for damages against Howard Savings, and (7) breach of duty and a claim for damages against Intercounty Title Insurance Company of Illinois (Intercounty).

In the alternative to counts I through VII, plaintiffs asserted a claim for ejectment in count VIII against Park and American National Bank and Trust Company, as trustee (ANB). Plaintiffs asserted that they owned a fee interest in the property in question with a right of possession and that defendant Park took possession of the property "without agreement with the plaintiffs." Plaintiffs then filed a first-amended complaint dropping count VII against Intercounty (thereby making count VIII in ejectment count VII) and adding Mrs. Park as a defendant to the count in ejectment.

Defendants' motion for judgment on the pleadings as to count VII in ejectment was granted and plaintiffs were given 28 days to re-plead. In the trial judge's opinion, the ejectment count was "very misleading" because it gave the impression that Park "simply moved into the property and took over." Additionally, although plaintiffs alleged that Mrs. Bulatovic's signature was forged, they did not allege the same for Mr. Bulatovic.

Plaintiffs then filed their second-amended complaint. They realleged counts I through VI by reference to their first-amended complaint and made count VII in ejectment more specific. In count VII, plaintiffs asserted that defendants, Mr. and Mrs. Park, entered onto the plaintiffs' property, took possession, and are

"unlawfully withholding possession of plaintiffs' property for one or more of the following reasons:

a. On plaintiffs' information and belief, defendants took possession of plaintiffs' property pursuant to a certain deed ***.

b. Prior to any signatures being affixed to the Deed, Mr. and Mrs. Bulatovic were named as the grantors so that both were intended to execute the Deed in order to effect a conveyance of plaintiffs' property.

c. Mrs. Bulatovic never signed the Deed.

d. Although Mr. Bulatovic believes he may have signed the Deed, Mr. Bulatovic never intended to cede control of the Deed to the Defendants without his wife's signature first being affixed and without receiving consideration in the amount of $525,000 from the Defendants.

e. The Deed was entrusted to plaintiffs' attorney, Robert Dobritchanin ('Dobritchanin'), for a purpose preliminary to a closing that was to be scheduled with the Defendants.

f. On the plaintiffs' information and belief, Dobritchanin caused or allowed Mrs. Bulatovic's signature to be forged on the Deed.

g. Without plaintiff's knowledge, authorization, or consent, Dobritchanin delivered the forged Deed to Defendants on or about December 16, 1988.

h. Plaintiffs never intended to cause or allow delivery of the Deed which the Defendants now hold."

Defendants Mr. and Mrs. Park and ANB again filed a motion for judgment on the pleadings as to count VII in ejectment. The trial court granted the motion to dismiss on the ground that the "plaintiffs' own allegations show that [defendant] Park has sufficient title here to resist any action for ejectment." The trial judge stated that, although plaintiffs claim that the deed was "somehow deficient" because Mrs. Bulatovic allegedly did not sign it as a grantor, it is clear that Mr. Bulatovic did sign the deed, gave it to his attorney for the purpose of closing the sale; and his attorney, in fact, did close the deal on the date set in the contract. The trial judge noted that it was plaintiffs' actions which put the deed "in play" and which vested their attorney with the apparent authority to sell the property. Therefore, the court concluded that, if plaintiffs have a cause of action, it is not against defendants Mr. and Mrs. Park. The court also denied the motions of both sides for sanctions.

Plaintiffs appeal the dismissal of count VII sounding in ejectment. Defendants cross-appeal the denial of sanctions.

Plaintiffs assert that the trial court erred in dismissing their claim for ejectment against defendants in alternative count VII because there were "sufficient well pleaded facts to indicate that plaintiffs did not intend for the Parks to receive the deed" until Mrs. Bulatovic signed it. Additionally, plaintiffs argue that the trial judge applied the wrong standard of review by basing his ruling upon his own factual determinations. Specifically, plaintiffs contend (1) that the trial court's finding that Mr. Bulatovic gave the deed to Dobritchanin, his attorney, for the purpose of closing the sale "contradicts" plaintiffs' allegation that Mr. Bulatovic gave the deed to his attorney for a purpose "preliminary" to the closing and (2) that "the court lacked cause to find [that] Mr. Dobritchanin [plaintiffs' attorney] had apparent authority to represent the plaintiffs." The plaintiffs also maintain that their allegations meet the statutory requirements for stating a claim in ejectment and that defendants are not *bona fide* purchasers.

Defendants contend that plaintiffs' allegations are in bad faith and clearly demonstrate that plaintiffs lack a factual basis to allege an

ejectment action. Defendants argue that by asserting that Mrs. Bulatovic did not sign the deed, plaintiffs are using their own breach of contract in failing to tender a properly executed deed as the basis for their action in ejectment. Defendants also assert that plaintiffs are misapplying the law regarding alternative pleading in an effort to obtain both the profits from the sale of the property and also possession of the property.

A motion for judgment on the pleadings admits the truth of all well-pleaded facts in the "attacked portions" of the complaint (*Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 389, 577 N.E.2d 1344, 1349) and challenges only the legal sufficiency of the pleading. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1100, 582 N.E.2d 1362, 1366.) A reviewing court must determine whether the challenged portion of the complaint, in the light most favorable to the plaintiffs, is sufficient to state a claim upon which relief may be granted. (*Aguilar,* 221 Ill. App. 3d at 1100-01, 582 N.E.2d at 1366.) In other words, a judgment on the pleadings is proper if the complaint reveals only questions of law and none of fact. *Pfeil v. Weerde* (1987), 152 Ill. App. 3d 759, 760, 504 N.E.2d 988, 989.

■ At this stage of the proceedings, the issue is solely the sufficiency of the pleadings and whether plaintiffs can conceivably prove a set of facts which would entitle them to prevail on their claim in ejectment. (*Weil, Freiburg & Thomas,* 218 Ill. App. 3d at 389, 577 N.E.2d at 1349.) If such a factual scenario exists, then plaintiffs may plead allegations in the alternative and, at trial, choose which theories of recovery to pursue. (*Wegman v. Pratt* (1991), 219 Ill. App. 3d 883, 895-96, 579 N.E.2d 1035, 1044.) The Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—613(b) (now 735 ILCS 5/2—613(b) (West 1992))) clearly authorizes alternative pleading, regardless of the consistency of the allegations, as long as the alternative factual statements are made in good faith and with genuine doubt as to which contradictory allegation is true. (See *Wegman,* 219 Ill. App. 3d at 895, 579 N.E.2d at 1044; *Illinois Casualty Co. v. Turpen* (1980), 84 Ill. App. 3d 288, 293, 405 N.E.2d 4, 7.) If these requirements of good faith and genuine doubt are met, then the inconsistent statements of fact will not be used as admissions against the pleader's interest. (*Turpen,* 84 Ill. App. 3d at 293, 405 N.E.2d at 7.) In other words, "[a] bad alternative does not affect a good one." Ill. Rev. Stat. 1991, ch. 110, par. 2—613(b) (now 735 ILCS 5/2—613(b) (West 1992)).

We note, however, that although plaintiffs may be pleading inconsistent *legal* theories, they really do not set forth any inconsistent *fac-*

*tual* allegations. Although several key facts which are clearly within plaintiffs' knowledge are more vaguely set forth in alternative count VII than they were earlier in the complaint, they are not blatantly inconsistent. For instance, in counts I through VI, it is alleged that Mrs. Bulatovic's signature was forged and necessarily implied that Mr. Bulatovic signed the deed. In alternative count VII, however, plaintiff alleges that Mr. Bulatovic "believes he may have signed" the deed. Moreover, in counts I through VI, plaintiffs allege that Mr. Bulatovic signed certain papers and gave them to their attorney, Dobritchanin, in order to establish "a preliminary escrow because *** Park was leaving the country." In alternative count VII, however, plaintiffs aver that they entrusted the deed to Dobritchanin for an unspecified purpose "preliminary to a closing that was to be scheduled with the defendants." At oral argument, plaintiffs' attorney made clear that Mr. Bulatovic did sign the deed and that the preliminary purpose for which he signed the deed, in fact, was to allow Dobritchanin to place the deed in an escrow. We will not say that the averments in count VII are inconsistent and made in bad faith, but they are certainly ambiguous and, as such, will be resolved "against the pleader." (*Church v. Adler* (1953), 350 Ill. App. 471, 483, 113 N.E.2d 327, 330.) Therefore, in the best interests of all parties, we will view the more specific averments of fact in counts I through VI as what plaintiffs meant when they pleaded alternative count VII.

■ In an action in ejectment, plaintiffs must allege (1) that they had possession of the subject premises after obtaining legal title, (2) that defendants subsequently took possession of the premises, and (3) that, at present, the defendants "unlawfully withhold[ ] from the plaintiff[s] the possession thereof." (Ill. Rev. Stat. 1991, ch. 110, par. 6—109 (now 735 ILCS 5/6—109 (West 1992)).) In order to maintain such an action, all the elements of ejectment must not only be pleaded, but also proved. (*Dagit v. Childerson* (1945), 391 Ill. 611, 614, 63 N.E.2d 706, 707.) Clearly, the object of an ejectment action is to obtain possession of land and involves a question of which party holds legal title. *Dagit*, 391 Ill. at 614, 63 N.E.2d at 707.

■ It is to be noted that it is a "time-honored principle that a plaintiff in ejectment must recover on the strength of his own title rather than the weakness of his adversary's title." (*Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1958), 13 Ill. 2d 258, 265, 148 N.E.2d 777, 781.) He must show proof of title under a deed sufficient to entitle him to possession of the premises, otherwise defendant cannot be ejected from the property whether defendant has title or not. (*Old Salem*, 13 Ill. 2d at 265-66,

148 N.E.2d at 781.) In order to recover property in a claim for eject-
ment, plaintiff must have an interest in the premises which is "higher
and better" than defendant's claim and which entitles him to present
possession (*Whitham v. Ellsworth* (1913), 259 Ill. 243, 246, 102 N.E.
223, 224), but in no event can he recover property from one who is in
lawful possession. (*Miller v. Frederick's Brewing Co.* (1950), 405 Ill.
591, 597, 92 N.E.2d 108, 111.) In the instant case, plaintiffs' own
well-pleaded factual allegations taken as true preclude a claim in
ejectment as a matter of law. The facts show that, at the least, Mr.
Bulatovic conveyed his interest in the property and, therefore, plain-
tiffs do not have a right to possession superior to defendants'.

Plaintiffs argue that count VII sufficiently pleads ejectment be-
cause it is averred that Mrs. Bulatovic never signed the deed. This al-
legation that Mrs. Bulatovic's signature is forged, however, is irrele-
vant. It has long been established that a joint tenant can convey his
own interest in property. (See *Wisniewski v. Shimashus* (1961), 22 Ill.
2d 451, 462, 176 N.E.2d 781, 787.) Therefore, if Mr. Bulatovic signed
the deed with the intent to convey his interest, then defendants have
an interest in the premises and cannot be ejected.

Plaintiffs also contend that, although Mr. Bulatovic did sign the
deed, he never had a present intent to convey his interest in the prop-
erty. Plaintiffs argue that Mr. Bulatovic signed the deed for the pur-
pose of setting up a preliminary escrow and with no intent to convey
the property without his wife's signature and without a contempora-
neous exchange of the deed for consideration of $525,000. Addition-
ally, plaintiffs maintain that defendants were foolish to enter into a
contract with Rapid Builders and Zecevic instead of with them since
they were the legal title holders. Therefore, plaintiffs assert that
there are sufficient well-pleaded facts to indicate that they did not in-
tend for the defendants to receive the deed. The factual allegations as
pleaded, however, show differently.

As plaintiffs correctly point out, delivery of a deed is essen-
tial to its validity and delivery is a question of intent. (*Logue v. Von
Almen* (1941), 379 Ill. 208, 216, 40 N.E.2d 73, 78.) To be a com-
pleted delivery, the grantor must have intended to "part with all
dominion, power and control over [the deed] and must retain no
right to reclaim or recall it." (*Stevens v. Stevens* (1912), 256 Ill.
140, 144, 99 N.E. 917, 918; see *McReynolds v. Miller* (1939), 372
Ill. 151, 154-55, 22 N.E.2d 951, 953.) The grantor's intent is evi-
denced by his words and acts (*i.e.*, "what he said and did at the
time") and not by that "which existed solely in [his] mind." (*McRey-
nolds*, 372 Ill. at 155-56, 22 N.E.2d at 953.) Bare allegations that

the grantor had no intent to deliver the deed are entitled to no weight. *McReynolds,* 372 Ill. at 155, 22 N.E.2d at 953.

Plaintiffs' claim for ejectment shows that Mr. Bulatovic entrusted the deed with his signature to his attorney for a purpose preliminary to a closing and with a view toward an imminent sale to these defendants for $525,000. Obviously, plaintiffs did not intend to convey the deed until receiving the purchase money, but the bare assertion that, in effect, the entire deal turned on Mrs. Bulatovic's signature is entitled to no weight. Additionally, the fact that the deed was entrusted to Dobritchanin, plaintiffs' attorney, for the purpose of setting up a "preliminary escrow" presumptively establishes Mr. Bulatovic's intent to deliver the deed.

The purpose of placing a deed in escrow is " 'to give security to both parties to an existing transaction' " and is considered a delivery subject only to any express conditions placed upon it at the time. (*Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 121, 380 N.E.2d 1177, 1182, quoting A. Corbin, Corbin on Contracts §249 (1952).) In other words, when a deed is placed in escrow it is considered delivered and cannot be recovered unless an express condition is attached at the time which reserves the right to revoke the escrow. The purpose of such an escrow is to guarantee exactly what Mr. Bulatovic alleges he intended, namely, that there be a contemporaneous exchange of consideration. Ultimately, as plaintiffs' attorney admitted at oral argument, the transaction closed in escrow and, therefore, there was a contemporaneous exchange of consideration. Plaintiffs do not allege that at the time Mr. Bulatovic signed the deed he expressed his desire to reserve the right to recall or revoke the escrow. Without such expressed conditions, Mr. Bulatovic's presumptive intent was to deliver the deed (*McReynolds,* 372 Ill. at 155, 22 N.E.2d at 953) and, when the deed was placed in escrow, it was delivered.

Additionally, a necessary condition to placing a deed in escrow is a preexisting contract between the parties. (*Hakala,* 64 Ill. App. 3d at 121, 380 N.E.2d at 1182.) By having the deed placed in escrow, Mr. Bulatovic was acknowledging that a contract for sale existed between him and defendants. This contract was signed by Zecevic for Rapid Builders. Therefore, plaintiffs' assertions that defendants were foolish to deal with Zecevic and Rapid Builders rather than the Bulatovics is contradicted by their own argument which admits that plaintiffs knew of and accepted the contract, thereby confirming Zecevic's authority to enter into the contract on their behalf. Consequently, plaintiffs' assertion that Mr. Bulatovic

signed the deed and entrusted it to his attorney for the purpose of setting up a preliminary escrow in contemplation of the sale to defendants establishes that Mr. Bulatovic was aware of the contract for the sale of the land to defendants and intended to deliver the deed to defendants in conjunction with that contract.

■ According to plaintiffs' attorney at oral argument, the transaction ultimately was closed in escrow. We also know that delivery of the deed by plaintiffs' attorney on the date set in the sale contract was in conformity with Mr. Bulatovic's underlying and expressed intention that his interest be conveyed to the Parks in exchange for the agreed upon contract price of $525,000. Therefore, the factual allegations in the claim for ejectment show that, at the least, Mr. Bulatovic conveyed his interest in the premises as a matter of law. Since an ejectment action seeks possession and defendants have a legal interest in the property, recovery on such a claim is precluded. Clearly, if plaintiffs were entitled to profits on the sale of their land and have a cause of action, it is not against defendants Mr. and Mrs. Park. After reviewing plaintiffs' claim, we affirm the trial court's entry of judgment on the pleadings as to plaintiffs' count in ejectment.

■ On cross-appeal, defendants maintain that plaintiffs' claim in ejectment is "on its face unfounded in fact" because the facts as pleaded by plaintiffs were directly opposite to those required to plead a *prima facie* case. Therefore, the trial judge abused his discretion in denying their request for sanctions or at least holding a hearing on the matter.

The purpose of sanctions is to prevent frivolous pleadings and those "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (134 Ill. 2d R. 137; *Singer v. Brookman* (1991), 217 Ill. App. 3d 870, 879, 578 N.E.2d 1, 6.) The decision whether to impose sanctions is a matter within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion. (*Singer*, 217 Ill. App. 3d at 879, 578 N.E.2d at 6.) "Whether a hearing must be held to determine if the allegations within a pleading are untrue and made without reasonable cause depends upon the circumstances presented in each case." (*Beno v. McNew* (1989), 186 Ill. App. 3d 359, 365-66, 542 N.E.2d 533, 537, *appeal after remand* (1991), 213 Ill. App. 3d 720, 572 N.E.2d 295.) Although a hearing is generally held, it is not necessary if the judge can determine the merits of the contention "by looking at the pleadings, trial evidence, or other

matters appearing in the record." *Beno*, 186 Ill. App. 3d at 366, 542 N.E.2d at 537.

We do not believe the trial judge abused his discretion in summarily denying defendants' motion for sanctions. It does not appear from the record that plaintiffs filed their alternative count in ejectment in bad faith or with the improper purpose to harass defendants or to cause unnecessary delay or needless increase in the cost of litigation. In addition, we note that defendants' reason for requesting sanctions is because it is factually impossible for plaintiffs to establish a claim in ejectment. This is precisely the reason that judgment on the pleadings was granted. If for that reason alone this court were to hold that the trial judge abused his discretion here, then any time judgment on the pleadings is granted on an alternative count, the prevailing party should be awarded sanctions. Moreover, we believe such a finding would cause other counsel to hesitate before pleading alternatively out of fear that if judgment on the pleadings is granted on any alternative count, they will be sanctioned. We find that any other conclusion in this case would place other parties who desire to plead alternatively "in the perilous situation of either foregoing one claim or having one claim used against another as an admission." (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 842, 462 N.E.2d 645, 651, citing *Slocum v. Ford Motor Co.* (1981), 111 Mich. App. 127, 134, 314 N.W.2d 546, 549.) Therefore, the trial court's denial of sanctions against plaintiffs is affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.