No. 3--00--0906

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

ADRIENNE ALBRECHT, as Special ) Appeal from the Circuit Court

Adm. of the Estate of ) for the 21st Judicial Circuit,

Harry C. Emhouser, Deceased, ) Kankakee County, Illinois

Plaintiff-Appellee, ) 

) 

v. ) 

) 

MARLO JEAN POPP BRAIS, ) No. 94--P--21

Defendant-Appellant )

)

(St. John United Church of )

Christ, and Otho Kalo )

Congregationalist Church, ) Honorable

Defendants-Appellees). ) Sheldon Regan 

) Judge, Presiding _______________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Plaintiff Duane J. O’Connor, as special administrator of the estate of Harry C. Emhouser (Harry), filed a complaint against defendants St. John United Church of Christ, Otho Kalo Congregationalist Church (collectively churches), and Marlo Jean Popp Brais (Brais) seeking a construction of the will to include certain farmland in the estate.  The court ruled that the farmland was part of the estate, and Brais appealed.  We affirm and hold that the grantor of a deed in escrow must intend to part with all dominion and control over the deed in order to effectuate delivery and, thus, secure the deed’s validity.   

FACTS

On June 19, 1994, Brais filed a petition for the probate of Harry’s will and for the issuance of testamentary letters.  The will devised to the churches the farmland which is the subject of this dispute.  Brais filed an inventory in which she included the farmland as part of the estate.  Five months later, for reasons that will be discussed, Brais filed an amended inventory whereby she requested to exclude the farmland.  The churches objected to the filing of the amended inventory.  

O’Connor was appointed as special administrator.  He filed a complaint seeking the inclusion of the farmland in the estate.  O’Connor was subsequently replaced by plaintiff Adrienne Albrecht as the special administrator.

The following is a recitation of the parties’ joint stipulation of facts.  Harry and his wife, Rose Emhouser, jointly owned the farmland that is the subject of this appeal.  On April 27, 1987, the Emhousers executed what was termed an "escrow" agreement and a quit claim deed which they delivered to Courthouse Title Service (Courthouse).  The escrow agreement provided that the Emhousers would execute a quit claim deed for the farm, to be held by Courthouse in favor of Brais, upon the following conditions:

1.  The deed would not be recorded by Courthouse.

2.  The Emhousers reserved the right to revoke the escrow agreement prior to the death of the survivor of the parties.

3.  Courthouse would not deliver the deed to Brais until both  the Emhousers were deceased.

Rose died in 1988, one year after the execution of the agreement.  On July 2, 1990, Harry executed a will in which he bequeathed the farmland to the churches.  At no time was any deed executed conveying the property to Courthouse as trustee.  But a quit-claim deed conveying the property to Brais was delivered to her after Harry’s death.         

The trial court ruled that the farmland was part of the estate.  No order of the court appears in the record.  The court docket provides that Harry’s will was "an effective revocation of the trust *** though the will had not become effective until the date of death of the testator.  Therefore, the real property in question is an assett [sic] of the estate."  Brais appealed the court’s order.                    

ANALYSIS

On appeal, Brais argues that the agreement between the Emhousers and Courthouse was actually a valid and binding trust.  She argues that Harry’s will did not effectively revoke the trust because, pursuant to 
Merchants National Bank v. Weinold
, 22 Ill. App. 2d 219, 160 N.E.2d 174 (1959), and 
In re Estate of Anderson
, 69 Ill. App. 2d 352, 217 N.E.2d 444 (1966), if a trust does not specifically state that it is revocable by will, it is only revocable by an 
inter
 
vivos
 act.  In this case, the agreement did not provide for its revocation by will; rather, the agreement specifically provided that it could be revoked only during the Emhousers’ lives.  Thus, Brais concludes, the court erred when it determined that the farmland was part of the estate.  We cannot agree. 

To create a trust, it is necessary to specify the following elements: (1) grantor or settlor; (2) trustee; (3) subject-matter or 
res
 of the trust; (4) beneficiaries; (5) the nature and quality of each beneficiary’s interest; and (6) the manner and time in which the trust is to be performed. 
Wynekoop v. Wynekoop
, 407 Ill. 219, 95 N.E.2d 457 (1950).  No particular form or words are necessary to create a trust.  A
 court will assume an intention to create a trust, however, only when such intention can be fairly presumed from the language of the instrument or the terms employed. 
Golstein v. Handley
, 390 Ill. 118, 60 N.E.2d 851 (1945).   

An escrow is defined as a written instrument that, by its terms, imports a legal obligation, and that is deposited by the grantor with a third party to be kept until the performance of a condition or happening of an event, at which time it is to be delivered to the grantee. 
Merchants National Bank v. Frazier
, 329 Ill. App. 191, 67 N.E.2d 611 (1946).  Merely labeling an agreement an "escrow" or a "trust" does not determine the real character of the transaction to be accomplished.  Its true purpose must be determined from the relations of the parties and their respective rights and duties. 
Merchants
, 329 Ill. App. at 202, 67 N.E.2d at 618.  

A trustee holds legal title to property for the welfare of the beneficiary, who holds equitable title.  An escrow agent, on the other hand, is not vested with title to the property, though he may be entrusted with possession and he may have power to pass title. 
Merchants
, 329 Ill. App. at 200-01, 67 N.E.2d at 617.

We hold that the agreement in this case was an escrow agreement and not a trust.  Though not decisive by itself, the agreement was clearly denoted an "escrow agreement" throughout.  More importantly, it did not give Courthouse legal title to the property to hold for Brais.  Rather, title remained in the Emhousers, and they retained the right to revoke the deed at any time.  Because the agreement was not a binding trust, it was unnecessary that the agreement provide for its possible revocation by will in order for the deed to have been recalled by Harry’s later testamentary act.  

We turn now to the question of whether the deed giving Brais title to the farmland was validly delivered in order to determine whether the property should be excluded from Harry’s estate.

The churches suggest that the deed was not properly delivered and, thus, title did not vest in Brais at Harry’s death.  Brais counters this argument by citing 
Bulatovic v. Dobritchanin
, 252 Ill. App. 3d 122, 625 N.E.2d 26 (1993),
 for the proposition that the delivery of a deed to an escrow agent with a clear set of instructions is "delivery" as required for the conveyance of a gift. 

It is a long-standing rule in Illinois that a deed which is validly delivered becomes effective at the time of its delivery and cannot be revoked by a later act of the grantor.  
Johnson v. Fleming
, 301 Ill. 139, 133 N.E. 667 (1921); 
Bulatovic
, 252 Ill. App. 3d at 130, 625 N.E.2d at 33.  Delivery of a deed is essential to its validity, and delivery is a question of intent. 
Bulatovic
, 252 Ill. App. 3d at 129, 625 N.E.2d at 32.  To be a completed delivery, the grantor must have intended to part with all dominion, power and control over the deed.  
Bulatovic
, 252 Ill. App. 3d at 129, 625 N.E.2d at 32.  In cases of delivery of a deed in escrow to a third person, the controlling question is whether the grantor reserved the right to recall or revoke his action. 
Herron v. Underwood
, 152 Ill. App. 3d 144, 503 N.E.2d 1111 (1987). 

In the instant case, the Emhousers specifically provided in the escrow agreement that the agreement could be revoked prior to the death of either Harry or Rose.  As a result, the deed that was the subject of that agreement was not properly delivered and, thus, it could not effectively convey the property to Brais.  For the same reason, it did not create a valid gift of the property to Brais.  Because delivery was lacking, the farmland became part of Harry’s estate at his death to be disposed of by his will. See 
Herron
, 152 Ill. App. 3d at 146, 156, 503 N.E.2d at 1113, 1120.  Accordingly, we affirm the trial court’s order finding that the farmland was part of Harry’s estate.    

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

LYTTON and McDADE, JJ., concur.